UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
Adore Me, Inc.,

              *Plaintiff*,

  - against -

NPC Global Corporation,

             *Defendant.*
-----------------------------------------------------------X

CASE NO.:

COMPLAINT

Plaintiff Adore Me, Inc. ("Plaintiff" or "Adore Me"), by and through its attorneys, Goldberg Segalla LLP, complaining of Defendant NPC Global Corporation ("Defendant" or "NPC"), alleges as follows:

## SUMMARY OF ACTION

1. Adore Me brings this action against Defendant for breach of contract, unjust enrichment, and fraudulent inducement on the basis of Defendant's material misrepresentations to Plaintiff and breaches of an Upstream Supply Chain Guide (the "USG") entered into by and between Plaintiff and Defendant, as well as the purchase order for 530,000 boxes (the "Purchase Order") which Defendant never filled and could not deliver.

2. In June 2017, Defendant knowingly and fraudulently induced Plaintiff to enter into the Purchase Order and pay a deposit of $57,950.00 (the "Deposit") by falsely representing that Defendant had the technical capability to fulfill Plaintiff's Purchase Order and comply with Plaintiff's technical requirements for the products purchased—boxes of different sizes with bar codes directly printed on them.

3. In reality, as Defendant was well aware, Defendant did not possess or have access to the machinery necessary to fulfill Plaintiff's purchase order and deliver conforming products.

4. Defendant ultimately breached the parties' USG and the Purchase Order. Defendant has acknowledged its breach of the agreements, and has unlawfully retained Plaintiff's Deposit made in connection with the Purchase Order.

5. As a result of Defendant's failure to timely fulfill Plaintiff's Purchase Order, Plaintiff was forced to purchase replacement products from a different supplier, at a total cost of $339,880.00, including an additional cost to Adore Me of $108,080.00.

6. Moreover, due to the significant delay caused by Defendant's failure to fulfill Plaintiff's Purchase Order during the busy holiday season, Plaintiff suffered substantial lost profits.

7. Pursuant to the USG governing the vendor relationship between Plaintiff and Defendant, Defendant is contractually obligated to return Plaintiff's Deposit and pay Plaintiff's consequential and replacement damages. As such, Defendant is indebted to Plaintiff in the aggregate amount of $276,030.00.

## PARTIES

8. Plaintiff Adore Me is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 16 East 34th Street, 14th Floor, New York, New York 10016.

9. Plaintiff is a women's apparel company that sells lingerie, sleepwear, swimwear, and activewear through its website and brick and mortar stores which are opening in the Northeast.

10. Upon information and belief, Defendant NPC Global Corporation is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business at 100 Middlesex Avenue, Suite 2, Carteret, New Jersey 07008.

11. Defendant is a national distributor of industrial packaging products and equipment, workplace safety products, good service, and janitorial supplies.

## JURISDICTION & VENUE

12. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiff is a citizen of a different state from Defendant and the amount in controversy exceeds the statutory threshold, exclusive of interest and costs.

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the contracts giving rise to the claims asserted herein were formed and negotiated in the State of New York, and a substantial part of the events occurred in New York.

## FACTUAL BACKGROUND

A. **Plaintiff's Initial Meetings With Defendant**

14. Since 2011, Plaintiff has been an online retailer of lingerie, sleepwear and swimwear that requires boxes to ship to merchandise to customers.

15. As Plaintiff's business continued to grow in revenue, it looked for ways to streamline its shipping process and costs by using boxes that had bar codes directly printed on them, compared to boxes where the bar codes were affixed with labels or packing slips.

16. In or about June 2017, Plaintiff met with Defendant's Vice President of Sales, David Wieder ("Wieder") and a Senior Account Executive at NPC, Miriam Samuels ("Samuels"), on two occasions in Adore Me's New York City office.

17. The purpose of these meetings was to discuss Defendant's ability to manufacture and sell the boxes that Plaintiff needed and negotiate the costs to produce these boxes.

18. Defendant was aware that Plaintiff was meeting with multiple potential vendors.

19. At these meetings, Weider and Samuels represented that NPC had the technical ability, i.e., the machinery, technology, and staffing, necessary to print bar codes directly on the Adore Me's boxes, as Plaintiff needed. Weider and Samuels further represented that NPC had provided these types of boxes to other customers previously.

20. Moreover, based on Weider and Samuels discussion with representatives of Adore Me, Defendant represented that it could deliver the boxes Plaintiff needed in a timely manner at a cost below that of NPC's competitors.

### B. The Upstream Supply Chain Guide

21. As a result of these successful and promising meetings, Plaintiff sent a copy of its USG to Defendant. The USG governs all relationships between Adore Me and its outside vendors, including NPC.

22. On or about June 12, 2017, Weider executed Plaintiff's USG.

23. Per all of Plaintiff's contracts with outside vendors, the USG governed the vendor relationship between Plaintiff and Defendant and sets forth specific technical requirements for, among other things, the production, packaging, shipping, and delivery of goods.

24. Section 8.3.21 of the USG expressly states that "[d]eadlines are a material condition of the contract between vendor and Adore Me. The deadlines indicated on any orders refers to date by which all items must be delivered to the destination."

25. Moreover, the USG provides as follows:

> Any order is placed with the express condition that delivery occurs within the contractual deadlines outlined in the Purchase Order and/or subsequent communications from Adore Me. Failure to comply with this condition grants Adore Me the right, at its sole discretion, to . . . terminate the contract and demand full recoupment of amounts from the vendor to which Adore Me is entitled under the USG. *Id.*

26. Finally, pursuant to the USG,

> In the event that vendor is unable to meet the technical requirements of a Purchase Order as specified in article 1 of this USG, Adore Me shall be entitled to reimbursement of all payments already made to the vendor in connection with the Purchase Order, as well as consequential and replacement damages. *Id.*

C.   **Plaintiff's Purchase Order**

27.   On or about August 23, 2017, Plaintiff placed the Purchase Order with Defendant in the amount of $231,800.00 (the "NPC Purchase Price") for (i) 420,000 Small Die Cut Red Boxes; (ii) 80,000 Large Die Cut Red Boxes; and (iii) 30,000 Extra Large Die Cut Red Boxes (collectively, the "Products"), all with 20Mil direct-print Grade B Barcodes (the "Technical Requirements").

28.   As Defendant was aware through multiple conversations with Plaintiff, the Technical Requirements were material and necessary terms of the Purchase Order and were essential to Plaintiff's business.

29.   The Technical Requirements for the Purchase Order were clearly communicated by Plaintiff to Defendant in writing via email, confirmed by Defendant via email, and again confirmed verbally by Wieder and Samuels on or about October 2, 2017.

30.   Plaintiff relied upon these representations in entering into the USG and placing the Purchase Order with Defendant.

31.   Pursuant to Defendant's invoice for the Purchase Order, dated September 11, 2017, Plaintiff was required to pay Defendant the Deposit of 25% of the total purchase price, which equaled $57,950.00.

32.   On or about September 14, 2017, Plaintiff paid the Deposit to Defendant.

33.   Pursuant to the Purchase Order, Defendant was required to deliver the Products no later than October 23, 2017 (the "Delivery Date").

34. As Defendant was further aware, because the Delivery Date was at the start of the holiday season rush, Plaintiff's busiest time of year, timely delivery of the Products was critical to Plaintiff's business.

### D. Defendant Fails to Fulfill the Purchase Order

35. On or about November 16, 2017, Defendant informed Plaintiff that Defendant was unable, or unwilling, to meet the Technical Requirements and fulfill the Purchase Order in breach of the USG and the Purchase Order itself.

36. Upon information and belief, Defendant knew that it would not be able to meet the Technical Requirements and fulfill the Purchase Order and never intended to comply with its obligations under the USG or Purchase Order.

37. After receiving notice that Defendant was unable to fulfill the Purchase Order as agreed upon, Plaintiff conferred with Defendant in an attempt to mitigate the damages caused by Defendant's breach of the Purchase Order and USG. Plaintiff even offered to compromise with Defendant, suggesting that Defendant could apply bar code labels for "Wave 1" of the order by label instead of having the bar code labels directly printed on the boxes, which was detailed in the Technical Requirements.

38. Specifically, Plaintiff provided Defendant with two alternative resolutions: (i) an Addendum to the Purchase Order, providing for extended delivery dates and slightly revised Technical Requirements for "Wave 1" of the shipment; or (ii) a release by Plaintiff of Defendant in exchange for a return of the Deposit.

39. Defendant refused each of the foregoing options and declined to come to agreement to amicably resolve this matter with Plaintiff.

E.  **Plaintiff Is Forced to Find a Replacement Vendor
Because Defendant Refuses to Negotiate in Good Faith**

40. Despite Plaintiff's attempts to find a viable solution, Defendant refused to negotiate a solution to the USG in good faith.

41. Perhaps most egregiously, on or about November 20, 2017, the President of NPC, Jay Schlesinger, admitted to Plaintiff's representatives that NPC did not even have the machinery necessary to directly print barcodes on the boxes.

42. This is a direct contradiction to Defendant's previous misrepresentation that it has the technology to directly print barcodes on the boxes.

43. Shortly thereafter, on or about December 5, 2017, following Defendant's refusal to mitigate the damages caused by its breach of the Purchase Order and USG or negotiate a solution in good faith, Plaintiff placed a purchase order with InnerWorkings, Inc. for the purchase of the Products that Defendant had originally agreed to deliver (the "InnerWorkings Purchase Order").

44. Pursuant to the InnerWorkings Purchase Order, Plaintiff purchased the Products for a total of $339,880.00, or $108,080.00 more than the NPC Purchase Price (the "Replacement Cost").

45. Pursuant to the explicit terms of the USG, Defendant was obligated to pay the Replacement Costs.

46. The delivery date under the InnerWorkings Purchase Order was February 22, 2018. Accordingly, in addition to the notable price differential that Plaintiff was forced to pay as a direct result of Defendant's breach of the Purchase Order and USG, Plaintiff suffered a substantial delay in the delivery of the Products during the holiday and Valentine's Day seasons, resulting in lost profits.

F.     **Plaintiff Demands a Return of the Deposit and Payment of its Damages**

47.    On or about December 8, 2017, Plaintiff notified Defendant via email that Plaintiff entered into the InnerWorkings Purchase Order to replace the Products that Defendant failed to deliver.

48.    At that time, Plaintiff requested a return of the Deposit and payment of the Replacement Cost pursuant to Section 8.3.21 of the USG.

49.    Defendant did not respond to Plaintiff's email and refused to engage Plaintiff or otherwise discuss an amicable resolution of this matter.

50.    On or about March 26, 2018, Plaintiff, through its undersigned counsel, sent a formal demand letter (the "Demand Letter") to Defendant setting forth the facts detailed herein and demanding an immediate return of the Deposit, payment of the Replacement Cost, interest accrued on the Deposit and Replacement Cost as a result of Defendant's initial refusal to pay same, and attorneys' fees in the amount of $20,000.00 for the cost of hiring counsel to obtain the foregoing payments.

51.    To this day, Defendant has failed and continues to fail to remit payment for the damages incurred by Adore Me based on Defendant's clear breach of the Purchase Order and USG, forcing Plaintiff to bring this action to recover the amounts due and owing to Plaintiff pursuant to the Purchase Order and USG.

## AS AND FOR A FIRST CAUSE OF ACTION
(Breach of Contract)

52.    Plaintiff repeats, reiterates, and realleges each and every allegation set forth in the above paragraphs with the same force and effect as if fully set forth herein.

53.    On or about June 12, 2017, Defendant, through Wieder, executed Plaintiff's USG.

54. On or about August 23, 2017, Plaintiff placed, and Defendant accepted, the Purchase Order.

55. The USG and Purchase Order are valid and enforceable contracts.

56. As set forth *supra*, Defendant breached the USG and Purchase Order by (i) failing to meet the Technical Requirements; (ii) failing to deliver the Products on or before the Delivery Date; and (iii) failing to reimburse Plaintiff for the Deposit and pay Plaintiff's Replacement Cost and lost profits.

57. As a result of the foregoing breaches, Plaintiff has suffered an out-of-pocket loss of the Deposit and Replacement Cost, as well as lost profits due to the delayed delivery of the Products during one of Plaintiff's busiest seasons.

58. Plaintiff substantially performed all of its obligations under the USG and Purchase Order.

59. As a direct and proximate result of Defendant's breach of the USG and Purchase Order, Plaintiff suffered damages in an amount to be determined at trial, but not less than $276,030.00, representing the Deposit of $57,950.00, the Replacement Cost of $108,080.00, and consequential damages of no less than $110,000.00 for lost profits, plus pre-judgment interest.

### AS AND FOR A SECOND CAUSE OF ACTION
(Unjust Enrichment in the Alternative)

60. Plaintiff repeats, reiterates, and realleges each and every allegation set forth in the above paragraphs with the same force and effect as if fully set forth herein.

61. As set forth *supra*, Plaintiff paid to Defendant the Deposit as partial payment for the Products that Defendant agreed to deliver to Plaintiff.

62. Defendant accepted the Deposit and agreed to timely deliver Products complying with the Technical Requirements, which were material terms of the contract.

63. Defendant failed to deliver the Products and meet the Technical Requirements.

64. It is against equity and good conscience to permit Defendant to retain the Deposit for Products which Defendant did not deliver to Plaintiff.

65. By reason of the foregoing, Defendant has been unjustly enriched at Plaintiff's expense in an amount to be determined at trial, but not less than $57,950.00, plus pre-judgment interest.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Fraudulent Inducement)

66. Plaintiff repeats, reiterates, and realleges each and every allegation set forth in the above paragraphs with the same force and effect as if fully set forth herein.

67. As alleged *supra*, Defendant, through Wieder and Samuels, represented that Defendant had the technical expertise to deliver the Products by the Delivery Date and comply with the Technical Requirements.

68. Specifically, in June 2017, Defendant represented that it had machinery calibrated to print bar codes directly on the boxes that Plaintiff was purchasing from Defendant.

69. Based on these representations, which Plaintiff later learned were false, Defendant was able to lull Plaintiff into choosing Defendant over its competitor to service the Purchase Order.

70. Defendant was aware that but for these misrepresentations, Plaintiff would not have entered into the USG and Purchase Order with Defendant.

71. Defendant knew the foregoing misrepresentations were false at the time they were made. Unbeknownst to Plaintiff at the time, but as Defendant was well aware when it negotiated the Purchase Order and USG with Plaintiff in 2017, Defendant did not even have the machinery necessary to print the barcodes on the boxes that Plaintiff needed.

72. Plaintiff reasonably relied upon Defendant's misrepresentations in entering into the USG and Purchase Order.

73. By virtue of Defendant's misrepresentations, Plaintiff suffered damages in an amount to be determined at trial, but not less than $276,030.00, plus punitive damages and pre-judgment interest.

**WHEREFORE**, Plaintiff demands judgment as follows:

i. On the First Cause of Action, awarding a judgment in favor of Plaintiff and against Defendant for damages in an amount to be determined at trial, but not less than $276,030.00, plus pre-judgment interest;

ii. On the Second Cause of Action, awarding a judgment in favor of Plaintiff and against Defendant for damages in an amount to be determined at trial, but not less than $57,950.00, plus pre-judgment interest;

iii. On the Third Cause of Action, awarding a judgment in favor of Plaintiff and against Defendant for damages in an amount to be determined at trial, but not less than $276,030.00, plus punitive damages and pre-judgment interest;

iv. Awarding Plaintiff its attorneys' fees, costs of suit, and interest as allowed by law; and

v. Awarding any such other and further relief as the Court may deem just and proper.

Dated: New York, New York
May 21, 2018

GOLDBERG SEGALLA LLP

*/s/ Hilary Dinkelspiel*

Adam S. Katz, Esq.
Hilary A. Dinkelspiel, Esq.
Ryan W. McNagny, Esq.
*Attorneys for Plaintiff*
711 Third Avenue
New York, New York 10017
Tel: 646.292.8700