```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
ADORE ME, INC.,                          :
                                         :
                    Plaintiff,           :     18cv4498 (DLC)
                                         :
              -v-                        :     MEMORANDUM OPINION
                                         :          AND ORDER
NPC GLOBAL CORPORATION,                  :
                                         :
                    Defendant.           :
                                         :
-----------------------------------------X
```

DENISE COTE, District Judge:

On April 30, 2019, plaintiff Adore Me, Inc. ("AMI") filed a motion in limine to preclude the introduction of certain parol evidence at trial to the extent it contradicts the terms of the parties' purchase order (the "Purchase Order") and an agreement dated September 1, 2017 (the "September Agreement"). For the reasons that follow, that motion is granted.

On August 18, 2017, AMI sent a Purchase Order to defendant NPC Global Corporation ("NPC") for $231,800 of red boxes of varying size, with a delivery date of October 23, 2017. NPC confirmed its receipt of the Purchase Order on the same day.

The parties continued to negotiate the terms of the purchase through a series of emails dated August 31 and September 1, between AMI supply chain analyst Nikhil Shetty ("Shetty"), NPC Account Executive Miriam Samuels ("Samuels") and NPC Sales Manager David Wieder ("Wieder"). Among other things,

NPC informed AMI that it would not be able to meet the October 23 delivery date:

> NPC: We unfortunately cannot commit to 10/23 as we still do not have the samples approved yet.
>
> AMI: The boxes need to be delivered within 11/8.
>
> NPC: As mentioned on our phone call, we agree to a lead time of 8-10 weeks ETS, from when the sample is approved.
>
> AMI: David confirmed it [sic] 8-10 weeks from PO placement, which was Aug 18th.  I can be flexible upto [sic] 11/8

Later on September 1, Shetty wrote a follow-up email to Wieder and Samuels stating: "Please let me know if we are aligned."  NPC's Samuels responded: "We are aligned in the agreements below."

The parties each rely on New York law in addressing this motion.  See Arch Ins. Co. v. Precision Stone, Inc., 584 F.3d 33, 39 (2d Cir. 2009).  In New York, "[t]o form a binding contract there must be a meeting of the minds, such that there is a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms."  Stonehill Capital Mgt. LLC v. Bank of the West, 28 N.Y.3d 439, 448 (2016) (citation omitted).  "Generally, courts look to the basic elements of the offer and the acceptance to determine whether there was an objective meeting of the minds sufficient to give rise to a binding and

enforceable contract."  Starke v. SquareTrade, Inc., 913 F.3d 279, 289 (2d Cir. 2019).  "In determining whether the parties intended to enter a contract, and the nature of the contract's material terms, we look to the objective manifestations of the intent of the parties as gathered by their expressed words and deeds."  Id. at 448-49.  "When an offeree does not have actual notice of certain contract terms, he is nevertheless bound by such terms if he is on inquiry notice of them and assents to them through conduct that a reasonable person would understand to constitute assent."  Starke, 913 F.3d at 289.

"[P]arties may modify a contract by another agreement, by course of performance, or by conduct amounting to a waiver or estoppel."  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 783 (2d Cir. 2003) (citation omitted).  "[F]undamental to the establishment of a contract modification is proof of each element requisite to the formulation of a contract, including mutual assent to its terms."  Id. (citation omitted).

> Under New York law, if a contract is straightforward and unambiguous, its interpretation presents a question of law for the court to be made without resort to extrinsic evidence.  But if the intent of the parties cannot be ascertained from the face of their agreement, the contract is ambiguous and it interpretation presents a question of fact.

Spinelli v. Nat'l Football League, 903 F.3d 185, 200 (2d Cir. 2018) (citation omitted).  "Contract language is ambiguous if it is capable of more than one meaning."  Matter of MPM Silicones,

LLC, 874 F.3d 787, 795 (2d Cir. 2017).  "If specific contract language is susceptible of two reasonable interpretations, the contract is ambiguous as a matter of law." Great Minds v. FedEx Office and Print Servs., Inc, 886 F.3d 91, 94 (2d Cir. 2018) (citation omitted).  "Ambiguity is determined by looking within the four corners of the document, not to outside sources." JA Apparel Corp. v. Abboud, 568 F.3d 390, 396 (2d Cir. 2009) (citation omitted).  "It is well settled that extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous on its face." W.W.W. Associates, Inc. v. Giancontieri, 77 N.Y.2d 157, 163 (1990) (citation omitted).  "As a general rule, extrinsic evidence is inadmissible to alter or add a provision to a written agreement." Schron v. Troutman Sanders LLP, 20 N.Y.3d 430, 436 (2013).

The evidence the parties have submitted for this bench trial shows that a contract was formed on September 1.  The September 1 contract is unambiguous with respect to delivery date.  AMI's representative stated "David confirmed it 8-10 weeks from PO placement, which was Aug 18th.  I can be flexible upto 11/8[.]"  In response, NPC's representative stated "we are aligned in the agreements below."  It is evident on the face of the emails that the agreed-upon delivery date was 8-10 weeks from August 18, but not later than November 8.  This is

4

unambiguous as a matter of law, and parol evidence may not be introduced to alter this term.

NPC essentially contends that no contract was formed on September 1 because the parties continued to negotiate after that date and deposition testimony from AMI employees that the September 1 emails are "confusing."  NPC is free to argue at trial, using any admissible evidence, that the September 1 contract was subsequently modified.  This is a separate issue from the interpretation of a term in the September 1 contract.

## Conclusion

AMI's April 30 motion to preclude the introduction of parol evidence at trial to establish the terms of the September 1 contract is granted.

Dated:    New York, New York
          July 2, 2019

_____
DENISE COTE
United States District Judge